Good afternoon. May it please the Court, I'm Matthew Alger, counsel for the appellant Delian Brewer. Thank you. I'm here to state the remarkable proposition that there is no right to the assistance of counsel in the presentation of perjured testimony. That is, there is no right to have a lawyer knowingly present false evidence on one's behalf in a criminal case. All he did was present what your client told him to present. That's true. He did. But he had to have known that was false. How is it? I didn't get that impression from the record that the lawyer knew, the second lawyer knew that it was false. First of all, did any court make a finding that the lawyer knew? No. That's my point. It's that the State court to tell me what you depend upon to come to the conclusion that the lawyer, the second lawyer, knew that it was false. There is absolutely no way that that second lawyer, Mr. Holmes, could not have known that the alibi was false. And I'll explain that. I'll explain why in a moment. But the State court never addressed that. The State court decision did not take into account whether or not the defense attorney for Mr. Brewer could have known that the evidence in support of the alibi was false. Should have known is different now. You said he actually knew. What's your contention? He knew or he should have known? He knew. He knew that alibi was false. He had to have known that. And the State court, in its habeas corpus decision, denying habeas corpus relief, doesn't even address whether trial counsel knew or even should have known. Let's assume that what you say is true, that he entertained doubts as to whether or not it was true. But his client himself, even before the representation, had already developed the theory of that case. And the lawyer merely initially went along with what the client told him was instructed him to do. What you're saying is that a defense attorney who's confronted with a client who he may not believe nevertheless has to go off on his own against the client's own direction. That what you're suggesting is heresy in the profession. That's exactly what I'm suggesting. If, in fact, the defense attorney knows that the testimony that he will be offering in support of the defense is false, he can't do any perjury. That's not the lawyer's job. The lawyer's job is not to judge the credibility of his client. The lawyer's job is to do to develop the facts the client and his investigation give him and to do as best a job as he can. And why isn't that what he did here? Even though I agree with you, it was a loser. He should have gone initially with the self-defense. Well, the lawyer cannot pursue a defense that he knows is false. That's suborning perjury. I mean, that's basic. How does he know it? Because the client tells him this. Listen, we've all represented clients who we thought maybe weren't totally truthful, but the client says it. It's not our job to – we're not the jury. We're the – represent the client. Absolutely. But if the evidence is so overwhelming in proving that the defense is false that it will be founded upon perjury, then the lawyer has a duty to prove it. You know, it wasn't overwhelming. If the co-defendant didn't take the stand, he had a good shot at winning this case. It was the client – it was the co-defendant, when he took the stand, that – that was the coup de grace. As a matter of fact, under his theory, he would have escaped complete – complete criminal charges. Under the alternative theory, he still would have been guilty of manslaughter at best. Right. And been subject to it. So – so why – why did – what you're suggesting here is that this was – he was represented by an unethical lawyer. Is that your – your position? Yes. That's what it comes down to. That's exactly what it comes down to. And in the Nix v. White side, the United States Supreme Court basically said that the right to the assistance, effective assistance of counsel, does not include the right to present perjured testimony. Now, we – you've got that thing in the record that supports the fact that the lawyer knew that this testimony was perjury, because we've all represented clients who we thought maybe were not, you know, pure as a driven stow. But when you're saying you've got to represent someone and weigh their testimony and – and not use that client, if you have some doubts, is – a lot of lawyers are going to go without retainers, I tell you right now. Well, I understand that. I understand that. What I'm saying is not that there were just two alternative views of the facts here, but that it just is objectively unreasonable to give any credibility to the alibi defense and the – Well, your guy told the lawyer, I wasn't there, I was somewhere else. And then he says, I've got a bunch of people who will verify that. I'd like to address that, because I was looking over the record yesterday, and I took particular note of Mr. Brewer's testimony, and that's tab 21 of volume 3 of the excerpts of the record, and at pages 15 and 16, Mr. Brewer's lawyer is asking about his attempt to recruit an alibi witness named Kim Hardy. And he says he made repeated attempts to get her to agree to come testify on his behalf in support of the alibi, and that she refused. Now, this is direct examination testimony. So defense counsel obviously knew that witness had refused to testify. He had other people. He had other people who were going to testify for him, didn't he? Yes, but – Okay. So the point of my question was, the client says to the lawyer, not only was I not there, but I have people who will verify that I was not there. What would you have the lawyer do? Well, I'm trying to put this in context. This lawyer knows that there was an alibi or there was a witness who refused to come testify. Well, like every case, you have people who say he was there. Okay? Otherwise, you know, they wouldn't have brought the case to begin with. But I'm asking you, the client says to the lawyer, I wasn't there, and I have a list of people who will tell you that I wasn't there, I was somewhere else. What would you have the lawyer do? Well, normally, I'd have the lawyer go with what the client says. But in this case, I mean – That's what he did, isn't it? Yeah, that's what he did. Well, let me ask you something. What would you have done if you were a trial attorney faced with the facts of this case at trial? What would you have done? So, say, you would have told him to go with the self-defense? Yeah. You either go with the unreasonable – But you know that's a lot of nonsense. He shot the guy in the back of the head. What jury is going to buy that bill of goods? The jury didn't buy it because, I mean, the California Court of Appeal even said this. They didn't buy the unreasonable self-defense theory because the credibility of the defense was destroyed by the attempt to present that false alibi in the opening statement. They said that ruined all of Mr. Brewer's credibility. You would have told Brewer to go with the self-defense knowing – I mean, I think you would suggest to yourself, this doesn't sound too cricket to me. Well, wait a minute. The whole circumstances of the transaction are such that they supported Mr. Brewer's testimony that he thought he had to defend himself because he was about to be robbed and he was going to be harmed in the course of the robbery. We've got a drug transaction that's taking place between two people who apparently don't get along with one another. There was a testimony. But this could have been won by going straight out for the self-defense, even though the guy – the victim was shot in the back of the head. That's right. We have a buyer who didn't have any money. Even the surviving victim, Mr. Savage, testified there was no money. Now, that's extremely suspicious. Why would the buyer not – I mean, what was this, a $4,500 deal and he has no money? I mean, that indicates there was an intent to rob Mr. Brewer. And then we have Mr. Brewer and his co-defendant being driven into a dark, deserted park. The whole – those circumstances supported Mr. Brewer's testimony that he thought he had to defend himself. Now, on the other hand, we've got Mr. Kufa having told the police that he and Mr. Brewer committed the shootings. We've got the surviving victim identifying Mr. Brewer and identifying Mr. Kufa as the shooters. They were not ironclad identifications. But nonetheless, he identified them. And he later told the police, well, Mr. Carter said that we're doing this deal with some guy named D'Quan Brewer from the Bay Area. So you have that. I see your time is up. I do see it. Okay. Thank you, Your Honor. Good afternoon. Good afternoon. May it please the Court. Darren Indermill for the Warden.   Or are you just saying that the defense is false? There's absolutely no evidence in this case that counsel knew that the alibi defense was false. And in fact, the appellant's own declaration that he submitted with his State habeas petition claimed that it was never brought up, that counsel never asked about it, that he never told him that it was false or that it was true. So there's simply just no evidence that counsel knew that this evidence or that this defense was false. Well, what there were, I think, is, Mr. Alger hinted that there were at least a lot of signs, right, that there was something fishy about the alibi defense. Yes. The alibi defense did have plenty of problems. But the unreasonable self-defense also had plenty of problems. In fact, the unreasonable self-defense there used to be. What you're saying is the fact that, you know, there are plenty of problems in asserting that defense is not the same as intentionally presenting a false defense. That's correct. If we look at the big picture here, when Mr. Holmes stepped in to represent the appellant in this case, he inherited a monumental task of defending an individual in face of overwhelming evidence of guilt. And there appeared to be two possible defenses to go with, the alibi defense and the unreasonable self-defense theory. Now, the unreasonable self-defense theory was inconsistent not only with the physical evidence of the case and being shot in the back of the head at close range and also inconsistent with Mr. Savage's testimony of the events that occurred. But that's what he went for. Ultimately, the attorney went for the self-defense and abandoned the alibi. As a matter of fact, he put himself into a box. He was talking out of both sides of his mouth when he summed up. I'm not sure that it's correct to put that responsibility on the attorney in this case. Well, didn't he change his mind after the accomplice placed Brewer on the scene of the shooting? Right? You know, it sums out at the beginning whether the accomplice would testify or not, but the co-defendant, right? Is that correct? Yes. We don't know exactly who made that decision. We know that the defendant has a right to testify. And if the defendant wants to testify, the attorney can't stop him. And the defendant is going to testify to what he wants to testify to. And we can't say that the counsel made this decision or the defendant made this decision. We just know that the defendant chose to testify, and he chose to testify to the unreasonable self-defense theory, which ultimately was the demise of his case. And we know that the defendant has a right to testify, and he chose to testify to the unreasonable self-defense theory, which ultimately was the demise of his case. His alibi defense was not destroyed to that point. It was not destroyed until he took the stand and made that switcheroo. Let me ask you another question, if I may, on a different subject. He was charged with two events. Is that right? Yes. The 1994 and 1995 robbery shootings. The first one happened November of 94. The second one happened February of 95. Yes. Are these connected in any way? No. It appeared that they were tried together simply for judicial economy. They were the same class of offenses. Aren't they – wouldn't it be fair to say they were misjoined? No. I don't think that's fair to say. You can just charge any crimes that they think this guy committed in one case? They don't have to be a common plan or scheme or something? Well, the issue is you have to look at the factors of joinder and whether they support that the defendant would be prejudiced by joining these particular cases. And the State court as well as the Ninth Circuit both look at almost the exact same factors. The first factor is whether the evidence was cross-admissible or whether the jury was able to compartmentalize that evidence. That's just one factor. Was any of this evidence cross-admissible? No. But there is evidence that the jury was able to compartmentalize that evidence and not use the evidence of the 94 charges to support the 95 charges. Specifically, there was a robbery murder special circumstance that the jury found not true in the 95 murder. Now, the jury found the defendant guilty of the 1994 robbery, and had it used that evidence to support the 95 charges, it would have found the robbery murder to be true because we know that he was guilty of robbery in 94, so he must have committed the robbery again in 95. And the jury found that that wasn't true. What's the Federal constitutional standard that governs a misjoined claim in a habeas case? Well, in this case, there is no clearly established Supreme Court precedent on that particular issue. In Collins v. Reynolds, this Court held that that particular language in United States v. Lane, that Court dealt with the joinder standards under the Federal rules. Don't you think that statement itself was different? I'm sorry? In Collins, in the case? Don't you think that statement itself is different? No. I believe that the issue before Collins was whether the Zapiro case and the Lane case were clearly established, and it found that neither of those cases were clearly established for a constitutional joinder. So in your view, there's no clearly established Supreme Court law on this issue? That's correct. Well, yeah, but you can't say that it doesn't prejudice a defendant to have two unrelated cases with practically the same crime tried in one at the same time. I mean, it's a – you didn't join them because it wasn't going to have an effect. Right. And one of the other factors that the courts look into in determining whether or not a joinder was prejudicial is whether a strong case was joined with a weak case or whether two weak cases were joined together in order to bootstrap them together to get two convictions. And in this case, we don't have that worry because both cases were incredibly strong. The evidence was overwhelming on both the 94 counts and the 95 counts. There was eyewitness testimony identifying the defendant. There was physical evidence. It was so overwhelming. How come they didn't convict him of robbery in the 95 – in the subsequent one then? They did convict him of attempted robbery. There was just not true finding on the robbery murder special circumstance. Yeah, special circumstance. But the jury certainly found that he attempted to rob at least Mr. Savage if he did not intend to rob Mr. Carter before he shot him. Unless there are any other questions, I'm prepared to submit. Thank you very much. Mr. Rodger, you used up your time, so the case is submitted at this time. Thank you, gentlemen.
judges: Cowen, Tashima, Silverman